UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FYT SUPPLIES, INC., and QING ZHANG**<br><br>**Plaintiffs,**<br><br>v.<br><br>**NAUTILUS INSURANCE COMPANY, and DANIEL SANTOS**<br><br>**Defendants.** | Civ. No. 20-6844 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    On May 1, 2020, Plaintiffs FYT Supplies, Inc. ("FYT") and Qing Zhang initiated an action in the Superior Court of New Jersey, Middlesex County, No. MID-L-002750-10 ("Coverage Action") against Defendants Nautilus Insurance Company and Daniel Santos. The Complaint seeks a declaratory judgment that the liability policy issued by Nautilus provides coverage for the personal injury suit initiated by Daniel Santos in the Superior Court of New Jersey, County of Middlesex, entitled *Daniel Santos v. Meadowlands Exposition Center at Harmon Meadow, et al.*, MID-L-719-19 ("the Personal Injury Action").

    On June 4, 2020, Defendant Nautilus removed the Coverage Action from state court to the United States District Court for the District of New Jersey on diversity grounds. This is that removed action. Nautilus now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the Personal Injury Action arose from an accident in Secaucus, New Jersey, and the bodily injury coverage of the policy is limited to occurrences at the Plaintiffs' place of business in Brooklyn, New York, I will grant Nautilus's motion to dismiss the complaint.

1

## I.    Background[1]

FYT is a New York corporation engaged in the business of supplying material and equipment for tattoo services. (Compl. ¶¶6, 10). FYT's principal place of business is in Brooklyn, New York. (Compl. ¶6). Zhang is an employee of FYT who resides in Flushing, New York. (Compl. ¶7). Nautilus, an Arizona insurance company "that provides excess and surplus lines commercial property and casualty insurance coverage," does business in New Jersey. (Compl. ¶8). This action involves a liability policy that Nautilus issued to FYT ("the Nautilus Policy"). (Compl. ¶3). Santos, the injured individual, resides in Iselin, New Jersey. (Compl. ¶9).

The Personal Injury Action arose from an incident on September 9, 2018 that caused injury to Santos. (Compl. ¶2). On that date, FYT employees were attending a trade show at the Meadowlands Exposition Center.[2] (Compl. ¶11). As alleged in the Complaint, FYT employees were moving materials "down a ramp" in a hand cart. (Compl. ¶12). The injury occurred when "the hand cart rolled down the ramp and impacted Santos." (*Id.*)

Santos initiated the Personal Injury Action against FYT and others. (Compl. ¶1). FYT tendered the defense of the Personal Injury Action to Nautilus. (Compl. ¶13). On February 8, 2019, Nautilus denied coverage to FYT, explaining "that coverage for the Personal Injury Action was excluded by the Nautilus Policy as FYT was 'loading or unloading' its vehicle at the time of the Incident, and that the location of the accident was not a covered location." (Compl. ¶¶14, 15). Plaintiffs FYT and Zhang initiated this action in state court

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Exhibit A, Plaintiffs' Complaint (DE 1-1)

[2]    Not to be confused with the sports stadium and racetrack, located nearby in East Rutherford, New Jersey. https://www.metlifestadium.com/; http://www.thebigm.com/.

to challenge the grounds for Nautilus's disclaimer and obtain a declaratory judgment that the Nautilus Policy obligates Nautilus to defend and indemnify Plaintiffs in the Personal Injury Action. (Compl. ¶6).

As alleged in the Complaint, the "Nautilus Policy is a primary commercial general liability insurance policy bearing policy number NN879445 effective for the policy period of February 14, 2018 to February 14, 2019." (Compl. ¶17). The Nautilus Policy, entitled "Commercial General Liability CG 00 04 04 13," includes coverage for bodily injury and property damage liability:

> **SECTION 1 – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the injured against any "suit" seeking damages for "bodily injury" or "property damage: to which this insurance does not apply . . ."
>
> ***
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .
>
> ***
>
> **SECTION V – DEFINITIONS**
>
> **4.**  "Coverage territory" means:
>
>   a.  The United States of America (including its territories and possessions), Puerto Rico and Canada . . .

(Compl. ¶18). As alleged in the Complaint, Nautilus relied upon Form S092 Limitation of Coverage ("Limitation of Coverage Endorsement") to deny FYT's

claim for coverage. (Compl. ¶19). That Limitation of Coverage Endorsement provides as follows:

## LIMITATION OF COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**
**Premises:**

      75 Van Brunt Street, Brooklyn, New York 11231

**Project or Operation:**

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

b. This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

    **(a)** Occurs on the premises shown in the Schedule; or

    **(b)** Arises out of a project or operation shown in the Schedule;

***

(Compl. ¶20).

The Nautilus Policy also contains endorsement CG0163 NY Changes – Commercial General Liability Coverage ("New York Changes Endorsement"). The New York Changes Endorsement provides, in pertinent part, as follows:

## NEW YORK CHANGES –

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **A.** Paragraph **A. Insuring Agreement** of Section **I – Coverage A Bodily Injury and Property Damage Liability** is replaced by the following:
>
>> 1. **Insuring Agreement**
>>
>> \*\*\*
>>
>> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"
>>
>> \*\*\*

(Compl. ¶21).

The Complaint alleges that Nautilus's reliance upon the Limitation of Coverage Endorsement in its disclaimer of coverage was misplaced in light of the New York Changes Endorsement. (Compl. ¶23). The Complaint alleges that the incident occurred within the coverage territory under the Nautilus Policy, and that pursuant "to the plain language of CG0163, which modifies the language initially modified by S092, the Personal Injury Action is covered." (Compl. ¶¶24-25). Alternatively, FYT avers that "the existence of both endorsements on the Nautilus Policy create[s] an ambiguity that, pursuant to the doctrine of contra proferentem, must be interpreted in Plaintiffs' favor."[3] (Compl. ¶26).

---

[3] The Nautilus Policy also contains an exclusion relating to bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to the insured." (Compl. ¶27). The Complaint alleges that Nautilus relied on that exclusion, in addition to the Limitation of Coverage Endorsement, to deny coverage. (Compl. ¶28). However, the parties do not analyze that exclusion in briefing. Instead, Nautilus and Plaintiffs focus on the Limitation of Coverage Endorsement and its interaction with the New York Changes Endorsement.

The Complaint also avers that "Zhang is an employee of FYT and was performing work for FYT at the time of the Incident." (Compl. ¶32). Therefore, it alleges, "Zhang is covered under the Nautilus Policy." (*Id.*).

The Complaint contains three causes of action.

The first is for a declaratory judgment that "FYT and Zhang are entitled to a defense and indemnification in connection with the Personal Injury Action." (Compl. ¶¶33-38).

The second cause of action asserts a claim for "improper disclaimer." (Compl. ¶¶39-47). The Complaint avers that "Nautilus has improperly disclaimed all coverage obligations due and owing under the Nautilus Policy"; "Nautilus relied upon Policy language that was vague and/or ambiguous"; "Nautilus relied upon Policy language that did not apply to the facts of the [Personal Injury] Action"; and "[t]hat such reliance was an improper and insufficient basis to disclaim coverage." (Compl. ¶¶41-44).

The third cause of action is for breach of contract. (Compl. ¶¶ 48-52). The Complaint asserts that "FYT paid Nautilus full and fair consideration for the Nautilus Policy, in the form of an insurance premium"; "[t]he Nautilus Policy provides Plaintiffs coverage for the [Personal Injury] Action"; "Nautilus has refused to provide coverage to Plaintiffs for the [Personal Injury] Action"; and "[i]n refusing to provide coverage, Nautilus has breached the Nautilus Policy." (Compl. ¶¶ 49-52).

On June 4, 2020, Defendant Nautilus removed this action from state court to the United States District Court for the District of New Jersey on diversity grounds. (DE 1). Nautilus now moves (DE 2) to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Nautilus contends that all causes of action raised in the Complaint depend on a finding that Nautilus owes a duty to defend and indemnify Plaintiffs in the Personal Injury Action. (DE 2 at 9). Nautilus submits, however, that no such duty exists. (DE 2 at 7). Plaintiffs do not dispute that their claims all hinge on a finding of coverage and focus their briefing on that issue. (*See generally* DE 5).

## II. Discussion

### a. Legal standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). I therefore rely on the insurance policy documents, which are cited by both sides.

### b. Choice of Law

This Court's "role in diversity cases is to apply state law as announced by the state's highest court." *LaBarre v. Bristol-Myers Squibb Co.*, 544 F. App'x 120, 125 (3d Cir. 2013) (citing *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) ("A federal court under *Erie* is bound to follow state law as announced by the highest state court." (internal citations omitted)). In the absence of a controlling decision by the highest court, "we must predict how it would decide the questions of law presented in this case." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 492 (3d Cir. 2015) (citing *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009)); *Leonard v. Tractor Supply Co.*, 88 F. Supp. 3d 459, 461 (W.D. Pa. 2015). A federal district court in

this position should consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Berrier*, 563 F.3d at 46 (quotation and citation omitted).

Here, both parties rely on New Jersey and New York law interchangeably in analyzing whether the Nautilus Policy requires coverage for the Personal Injury Action, even though the Policy was entered into in New York. (DE 5 at 10 n.2; DE 6 at 5 n.1). Both Plaintiff and Nautilus submit that, for the purposes of this motion, there is no conflict between the laws of New Jersey and New York with respect to the interpretation of an insurance contract. (DE 5 at 10 n.2; DE 6 at 5 n.1). Because the parties agree that there is no material conflict, I will follow the lead of the parties, and refer to the laws of both states interchangeably.[4] *See Northrop Grumman Corp. v. Axis Reinsurance Co.*, 809 F. App'x 80, 88 (3d Cir. 2020) ("The parties agree that California and Virginia law do not conflict materially on the relevant issues. When there is no 'true conflict,' we 'may refer interchangeably to the laws of the states whose laws potentially apply.'").

### c. Canons of Insurance Contract Interpretation

"[T]he existence of a duty to defend is determined by whether the allegations of a complaint, upon its face, fall within the coverage provided by an insurance policy." *Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 483 A.2d 402, 404–05 (N.J. 1984) (citing *The Ohio Cas. Ins. Co. v. Flanagin*, 210 A.2d 221 (N.J. 1965)). Thus, the duty "is solely a contractual undertaking of the insurer and it can be as limited or as broad as the insurer sees fit to provide through its policy." *Id.* at 405; *see also Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56 (N.Y. App. Div. 2003) (noting that the "duty to defend is not an inflexible rule" and that the duty "expressly arises out of the insurance

---

[4] The parties agree there is no conflict between the two states' laws for purposes of this motion only. (DE 5 at 10 n.2; DE 6 at 5 n.1). Nautilus reserves its right to argue later on that a true conflict of laws exists. (DE 6 at 5 n.1).

contract"). "When the complaint and the policy correspond, the insurer must defend the suit." *Sahli v. Woodbine Bd. of Educ.*, 938 A.2d 923, 930 (N.J.2008). The question of whether there is a duty to defend is, therefore, one of contract interpretation. The interpretation and construction of contracts are matters of law for the court to decide. *Sealed Air Corp. v. Royal Indem. Co.*, 961 A.2d 1195, 1203 (N.J. Super. Ct. App. Div. 2008).

In discerning the meaning of an insurance contract, "the plain language is ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citing *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262 (N.J. 2001)). Indeed, "[i]f the language is clear, that is the end of the inquiry." *Id.* And, where there is no ambiguity, "a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Id.* (quoting *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001)).

Where there is ambiguity in the language of the contract, a court will generally adopt the meaning most favorable to the non-drafting party. *Id.* (citing *Pacifico v. Pacifico*, 920 A.2d 73 (N.J. 2007)). Ambiguity exists where there are at least two reasonable alternative interpretations of a provision, *id.*, and "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1075 (N.J. 2016) (internal quotation marks omitted) (quoting *Progressive Cas. Ins. Co.*, 765 A.2d at 202).

Exclusions to coverage "are presumptively valid and enforceable," provided they are "specific, plain, clear, prominent, and not contrary to public policy." *Wear v. Selective Ins. Co.*, 190 A.3d 519, 528 (N.J. Super. Ct. App. Div. 2018) (internal quotation marks omitted) (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010)). Generally, such "exclusions are narrowly construed," and "[t]he insurer has the burden of bringing the case within the exclusion." *Id.* Nevertheless, courts should not disregard the clear intent of an

exclusion: "Far-fetched interpretations . . . are insufficient to create ambiguity requiring coverage." *Id.* Coverage provisions, by contrast, require a broad reading. *Sealed Air Corp.*, 961 A.3d at 1203.

"[I]n construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Cty. of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994). Further, "[a]n insurance contract should not be read so that some provisions are rendered meaningless." *Id.*; *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Pa., 833 N.E.2d 232, 234 (N.Y. 2005) ("We construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.") (internal quotation marks omitted) (quoting *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002)); *Simonetti v. Selective Ins. Co*, 859 A.2d 694, 698 (N.J. Super. Ct. App. Div. 2004) ("[W]hen interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms."). When an "endorsement modifies, qualifies or restricts the terms of the original policy, the . . . endorsement controls." *Gabriele v. Lyndhurst Residential Cmty., L.L.C.*, 43 A.3d 1169, 1174 (N.J. Super. Ct. App. Div. 2012) (internal quotation marks omitted) (quoting 2 G. Couch, *Couch on Insurance* 2d, § 21.22 (2010); *see also* 4 Eric Mills Holmes, *Appleman on Insurance* 2d, § 20.1 (1998) ("If any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control.").

Finally, insurance contracts are "construed in a manner that recognizes the reasonable expectation of the insured." *Simonetti*, 859 A.2d at 698-99.

11

### d. Nautilus's Duty to Defend

Nautilus submits that the Limitation of Coverage Endorsement excludes coverage for the Personal Injury Action.[5] (DE 2 at 7). I agree.

Santos seeks damages against FYT and Zhang in the Personal Injury Action based on bodily injury that Santos sustained at the Meadowlands Exposition Center in Secaucus, New Jersey. (Compl. ¶¶2, 10). Nautilus points to the Limitation of Coverage Endorsement's proviso that the Nautilus Policy applies only to bodily injury that "[o]ccurs on the premises shown in the Schedule," which lists only one location: "75 Van Brunt Street Brooklyn, NY 11231," which is FYT's principal place of business. (DE 2 at 15; DE 1-3 at 60; DE 5 at 40; Compl. ¶6). Because the injury did not occur on the Brooklyn premises listed in the Schedule, but in New Jersey, Nautilus contends that the Policy does not provide coverage.

Plaintiffs respond that Nautilus's argument is incomplete because it fails to take into account another endorsement, the New York Changes Endorsement. (DE 5 at 13). That endorsement, like the main Nautilus policy, provides that the Nautilus Policy applies to bodily injury "caused by an 'occurrence' that takes place in the 'coverage territory.'" (DE 1-3 at 63; DE 5 at 43). In section V, the definitions section of the main Nautilus Policy (which is not addressed directly by either endorsement), the "coverage territory" is defined as, *inter alia*, "[t]he United States of America (including its territories and possessions). . . . " (DE 1-3 at 23; DE 5 at 35). Plaintiffs submit that, because the injury occurred in New Jersey, which is within the coverage territory, the Personal Injury Action is covered under the New York Changes Endorsement. (DE 5 at 13). The Limitation of Coverage Endorsement's confinement of coverage to the Brooklyn premises, they say, is not operative

---

[5] The Nautilus Policy, including the relevant endorsements, was submitted both with the original, removed complaint and with Plaintiffs' brief in opposition to the motion to dismiss. (DE 1-3; DE 5). It is integral to the complaint and explicitly relied upon by both sides. I will therefore consider the Policy in analyzing Nautilus's motion to dismiss. *See In re Rockefeller Ctr.*, 184 F.3d at 287.

because it purports to modify only the main Nautilus Policy itself, and does not specifically refer to the New York Changes Endorsement.

As outlined above, the Nautilus Policy, in Section I.A.1.b., provides coverage for bodily injury "only if" the injury occurs in the "coverage territory." (DE 1-3 at 11; DE 5 at 23). The Limitation of Coverage Endorsement, however, states that it modifies the insurance provided under the "COMMERCIAL GENERAL LIABILITY COVERAGE PART," and states that this endorsement replaces Section I.A.1.b. of that Policy. (DE 1-3 at 60; DE 5 at 40). As explained above, that Limitation of Coverage endorsement further restricts the coverage to bodily injuries that occurred (a) in the coverage territory *and* (b) at Plaintiff's principal place of business in Brooklyn, New York. (DE 1-3 at 60; DE 5 at 40).

The New York Changes Endorsement contains a new Paragraph 1, and states specifically that it "replace[s]" the corresponding portion of the main policy ("SECTION I – COVERAGES COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY 1.  Insuring Agreement"). (DE 1-3 at 63; DE 5 at 43). The New York Changes Endorsement, like the main Policy, states that it provides coverage for bodily injury that occurred in the "coverage territory." (DE 1-3 at 63; DE 5 at 43). It does not change the language of the main policy in that respect, although it does modify other features.[6] The endorsement does not red-line or otherwise distinguish the paragraph 1 provisions that are altered from those that are not rather, it simply promulgates a replacement paragraph 1 that in most respects is the same as the main policy's original version, but in some respects different.

In particular, the New York Changes Endorsement, like the original, refers to "coverage territory" but does not add or subtract anything from the definition of that term. In that respect, then, the main policy remains exactly the same; as relevant here, the policy's paragraph 1 language "is replaced" by

---

[6]    The New York Endorsement modifies other provisions of the Nautilus Policy not relevant here. (*Compare* COMMERCIAL GENERAL LIABILITY COVERAGE FORM (DE 1-3 at 11-26; DE 5 at 23-38), *with* NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM (DE 1-3 at 63-65; DE 5 at 43-45)).

13

identical language. It is only the Limited liability Endorsement that further limits the Section V "coverage territory" (encompassing, *inter alia,* the United States and Canada). The Limited Liability Endorsement repeats the requirement that the occurrence take place, within the geographic "coverage territory," but adds the requirement that it *also* take place at FYT's Brooklyn premises:

> This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in "coverage territory" only if:
>
> **(1)**  The "bodily injury" or "property damage":
>
>> **(a)**   Occurs on the premises shown in the Schedule; or
>> **(b)**   Arises out of a project or operation shown in the Schedule;

(Limitation of Liability Endorsement, DE 1-3 at 60). The schedule, immediately above the quoted passage, lists only one location: 75 Van Brunt St., Brooklyn, New York.) In short, the language of the New York Changes Endorsement is inserted into a policy which also lists and explicitly incorporates the Limitation of Liability Endorsement.

Any other approach makes nonsense of the policy's structure, suggesting that each individual endorsement, by referencing only the main policy, nullifies the other endorsements. The Court will not, however, disregard an endorsement that explicitly addresses the issue at hand, merely because there is another endorsement that doesn't. Reading the policy as a whole, as I must, I view the Limitation of Liability Endorsement as a modification of the policy— the "policy" being deemed to include *all* of its provisions, including the New York Changes endorsement.

My reading is reinforced by a general survey of the evident scope and purpose of the New York Changes Endorsement. As the name suggests, it adds

or modifies terms specific to the legal environment of New York.[7] It does not say anything about expansion or contraction of the "covered territory"; in the course of replacing paragraph 1, it simply preserves that paragraph's provision that bodily injury coverage applies in the "covered territory," a virtual truism.[8]

---

[7] Rendering it an unlikely vehicle, by the way, for extension of liability to occurrences in other states, such as New Jersey.

[8] Section I.A.1.a. of the original Policy states, *inter alia*, "We will have the right and duty to defend the insured against any 'suit' seeking those damages." (DE 1-3 at 11; DE 5 at 23). The New York Changes Endorsement adds the following to that sentence: "even if the allegations of the 'suit' are groundless, false or fraudulent." (DE 1-3 at 63; DE 5 at 43). The New York Changes Endorsement also adds that quoted language to Section 1.B.1.a. (Coverage B Personal and Advertising Injury Liability). (DE 1-3 at 64; DE 5 at 44).

The New York Changes Endorsement also provides notice requirements consistent with New York law that are not specified in the original Policy. *See* N.Y. Ins. Law. § 3420. In Paragraph 2. of Section IV – Commercial General Liability Conditions ("Duties In The Event Of Occurrence, Offense, Claim Or Suit") the endorsements adds as Paragraph e.: "Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us." (DE 1-3 at 64; DE 5 at 44). In Paragraph 3 of Section IV ("Legal Action Against Us"), the endorsement adds:

> With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide notice.
>
> However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:
>
> (1) Brings an action to declare the rights of the parties under the policy; and
>
> (2) Names the injured person, someone acting for the injured person or other claimant as a party to the action.

(DE 1-3 at 64; DE 5 at 44). The endorsement also includes a notice provision that "is added and supersedes any provision to the contrary":

> Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced

15

When an endorsement modifies the terms of the original policy, the endorsement of course controls. *Gabriele,* 43 A.3d at 1174. Here, both endorsements modify some aspect or aspects of the general Nautilus Policy ("COMMERCIAL GENERAL LIABILITY COVERAGE PART"). However, only the Limitation of Coverage Endorsement modifies the precise provision at issue here: Section I.A.1.b., which limits the geographic scope of covered bodily injury occurrences to the Brooklyn premises. As the name of the endorsement implies, it is a *limitation* of the scope of coverage that would otherwise apply.

In contrast, the New York Changes Endorsement does nothing to alter the geographic scope of Section I.A.1.b; that is not its purpose. Rather, it (1) incorporates notice requirements under New York law; (2) makes clear that, where there is a duty to defend, that duty applies "even if the allegations of the 'suit' are groundless, false or fraudulent"; and (3) provides that the definition of "loading or unloading" in the original Policy do not apply. The New York Changes Endorsement does not modify, or even really touch on, the scope of the main Policy's geographic coverage restrictions.

Reading the Nautilus Policy and the endorsements as a whole, it becomes clear that there is only one modification to the precise section at issue, and that modification is contained in the Limitation of Coverage Endorsement. Plaintiffs' interpretation would render it meaningless. The policy and endorsements, however, must be read as a whole, so as to give effect to all of their parts; no interpretation should be adopted that renders any of them a nullity. *See Cty. of Columbia,* 634 N.E.2d at 950; *Simonetti,* 859 A.2d at 698. I find that the Limitation of Coverage Endorsement controls, and confines liability to occurrences at the Brooklyn facility.

---

us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

(DE 1-3 at 65; DE 5 at 45). Finally, the endorsement provides that the definition of "loading or unloading" in the Definition section does not apply. (DE 1-3 at 65; DE 5 at 45).

16

I am cited no case precisely on point. Thus, I go no farther than to state that my reading of this policy is consistent with the cases interpretating similar policies.

In *Richner Communications, Inc. v. Towers Insurance Company of New York*, the Appellate Division held that the insurance company "was not obligated to defend and indemnify the plaintiff in [a Personal Injury Action]" because "the subject policy contained an endorsement that expressly limited coverage to certain 'Designated Premises' shown in the 'Declarations' page of the policy." 898 N.Y.S.2d 615, 617 (App. Div., 2d Dep't, 2010). Here, too, the Limitation of Coverage Endorsement is listed in the "Declarations" page, clearly expressing an intent to modify the terms of the policy. (DE 1-3 at 3-4; DE 5-20-21). The court also "reject[ed] the plaintiff's contention that the policy was rendered ambiguous by a provision that stated '[t]his insurance applies' to bodily injury 'caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id.*; *see also Illinois Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, 2014 WL 639420, at *8 (E.D.N.Y. Feb. 18, 2014) ("[T]he broad 'coverage territory' provision in the Policy does not render the limitation of coverage under the Designated Premises Endorsement ambiguous.").

The ambiguity, Plaintiffs argue, lies in the apparent conflict between the Limitation of Coverage Endorsement and the New York Changes Endorsement. (DE 5 at 10-14). For the reasons stated above, this is not truly a conflict; the Limitation of Coverage endorsement is unambiguous, and its intended effect is clear. For this reason, the cases cited by Plaintiffs are unpersuasive, because each involves an endorsement that is *itself* ambiguous. *See Buntin v. Cont'l Ins. Co.*, 583 F.2d 1201, 1207 (3d Cir. 1978) ("Since the language of the endorsement in this case is ambiguous, and the effect of endorsement unclear, the endorsement must be interpreted to include the omnibus clause of the basic policy (that is to say, in a manner favorable to coverage)."); *Empire Fire & Marine Ins. Co. v. Intek Auto Leasing, Inc.*, No. 17-4525 , 2019 WL 8406953, at *15 (D.N.J. Dec. 18, 2019) ("[T]he conflicting use of prepositions in the same

17

section of the Insurance Policy itself demonstrates the ambiguity associated with the language at issue in this case. Accordingly, the Court must construe the language against Plaintiff, the insurer."). The endorsement in *Lane v. Tishman Constr. Corp of New Jersey*, unlike the one here, was found ambiguous because it lacked any language indicating that it actually was intended to modify the original policy. No. A-4258-05T5, 2007 WL 1062182, at *8 (N.J. Super. Ct. App. Div. Apr. 11, 2007) *("*The confusion grew out of the fact that the general policy language indicated that an endorsement 'can amend or modify,' not that it did, together with the existence of other amending endorsements that specifically warned that the endorsement modified, amended, or changed the policy provisions. The judge properly identified the ambiguity as failure to have modifying language.").

*Newman v. United Fire & Casualty Company*, 668 F. App'x 816 (9th Cir. 2016) is likewise distinguishable. There, in an unpublished memorandum opinion, the United States Court of Appeals for the Ninth Circuit found an exclusion endorsement ambiguous because it purported to limit coverage to claims "arising out of . . . the use of" a listed location. 668 F. App'x at 817. The Court found that phrase ambiguous, in that it could include coverage for an injury occurring elsewhere that nevertheless flowed somehow from the use of the specified premises. *Id.* The Limitation of Coverage Endorsement, in contrast, unambiguously states that insurance applies to bodily injury "*only if*" the injury "[*o*]*ccurs on* the [Brooklyn] premises." (DE 1-3 at 60; DE 5 at 40 (emphasis added)).

Plaintiff's reliance on *Evanston Insurance Company*, 145 F. Supp. 3d 1140 (S.D. Fla. 2015), is also unavailing. There, the United States District Court for the Southern District of Florida, applying Florida law, held that an exclusion limiting coverage to liabilities incurred at a specific location was not clear and unequivocal. 145 F. Supp. 3d at 1149. First, the court noted that the exclusion made no reference to the part of the policy it purported to modify. *Id.* at 1150. Not so here. The Limitation of Coverage Endorsement explicitly states

18

that it modifies the Commercial General Liability Coverage Form, and states that "Paragraph 1.b. under Section 1 – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following . . . ." (DE 1-3 at 60; DE 5 at 40). Second, the *Evanston* court found that the limitation in the exclusion appeared to be in conflict with the original policy's coverage territory. *Evanston Ins. Co.*, 145 F. Supp. 3d at 1150. The policy there, like the one here, applied coverage to liabilities incurred in the "coverage territory" which was defined, *inter alia*, as the United States. However, the exclusion in *Evanston* did not seek to modify that definition and left the relation between the definition and the limiting language unclear. *Id.* Here, in contrast, the Limitation of Coverage Endorsement expressly addresses and limits the effect of the "coverage territory." In pertinent part, the endorsement provides: "This insurance applies to 'bodily injury' . . . caused by an 'occurrence' *that takes place in "coverage territory" only if:* (1) The 'bodily injury' . . . (a) *Occurs on the premises* shown in the Schedule." (DE 1-3 at 60; DE 5 at 40 (emphasis added)).

Plaintiffs' remaining arguments require less attention. Plaintiffs contend that "the reasonable expectation of FYT is that the Policy is a general liability policy that provides coverage for accidents within the 'coverage territory', which includes the United States." (DE 5 at 13). There can be no "reasonable expectation" however that contravenes the clear language of the Limitation of Coverage Endorsement, which expressly *limits* coverage to the listed premises.

Plaintiff also relies on *Evanston* for the proposition that the price of the insurance premium is relevant to determining the reasonable expectation of the insured. As noted above, (1) that case involved Florida law and (2) the court found ambiguities. *See* 145 F. Supp. 3d at 1149. Neither factor applies here. In determining whether there is a duty to defend, a court is to compare the complaint with the *words* of the policy, *Hartford Acc. & Indem. Co.*, 483 A.2d at 404–05, not the *cost* of the policy. Wan arguments about the policy's premiums are not sufficient to displace the policy's actual terms. *See Chubb Custom Ins. Co.*, 948 A.2d at 1289 ("If the language is clear, that is the end of the inquiry.")

19

### III.     Conclusion

Based on the unambiguous language of the Limitation of Coverage Endorsement, I find that Nautilus does not have a duty to defend or indemnify Plaintiffs in the Personal Injury Action, because the injury did not occur on the listed premises in Brooklyn. The Limitation of Coverage Endorsement expressly limits what would otherwise be the Nautilus Policy's territorial reach. The New York Changes Endorsement does not modify that geographic limitation, but only amends the original Policy in ways not relevant to the present matter. The Court construes the policy as a whole, giving effect to all of its parts, and will not adopt an interpretation that renders the Limitation of Coverage exclusion superfluous and meaningless.

The Complaint, which rests on the proposition that the occurrence alleged in the Personal Injury Action is covered by the policy, is therefore dismissed in its entirety. An appropriate order follows.

Dated: February 1, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**